UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
KTB OIL CORPORATION,

                Plaintiff,                Case No. 08 Civ 00584 (LAP)

- against -

ORAM TANKER LTD.

                Defendant.
------------------------------------------------x

## MEMORANDUM IN SUPPORT OF
## BAUCHE ENERGY S.A.'S MOTION TO DISMISS ATTACHMENT

Intervenor, Bauche Energy S.A. ("Bauche Energy"), respectfully moves, on an urgent basis, pursuant to Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure and Local Admiralty and Maritime Rule 10.1 for an order vacating the June 12, 2008 attachment of an electronic funds transfer ("EFT"), restrained pursuant to an order of maritime attachment (the "Order") issued in this action on January 24, 2008. A decision is urgently needed to avoid substantial damage to Bauche Energy from threatened delay to the vessel, MT ORAM BLOSSOM, which is due to arrive in Korea later today (Monday, June 30, 2008) or tomorrow, in order to deliver a cargo to Bauche Energy's customer. R. Dip. Decl. ¶12.

1

The primary ground for vacatur of the attachment is that the attached funds are not "property of the defendant" Oram Tanker Ltd. but represent a freight payment from Bauche Energy to Oram Marine Co. Ltd. ("Oram Marine"), a nonparty to this action.[1]

## FACTS

The facts are set forth in the accompanying declarations of Bauche Energy's Financial Director, Roberto Dip; its counsel, James D. Kleiner; and Dae-Kyun Jeong, a director of Oram Marine.

Bauche Energy chartered the tanker, MT ORAM BLOSSOM, under contract of charter party (the "Charter Party") with defendant's affiliate, Oram Marine Co., to deliver a cargo of ethanol to Bauche Energy's customer in Korea. Dip Decl. ¶2, 3, Ex. 1. The Charter Party required Bauche Energy to pay freight for the voyage to Oram Marine, as "Owner." *Id.* ¶4 (See Bauche Energy Terms and Conditions, Clause 24 which are annexed as rider provisions of the Charter Party, Ex. 1.)

Oram Marine duly issued its invoice dated June 9, 2008 for $211,402.44 in freight and sent it to the chartering brokers, Pole Shipping S.A., designating its bank account no. 650006485917 and identifying as beneficiary "Oram Marine Co. Ltd." *Id.* ¶5, Ex. 2. By invoice also dated June 9, 2008, the chartering brokers reissued the freight invoice, in the sum of $206,117.38, reflecting the deduction of brokers' commission and forwarded it to Bauche Energy for payment. *Id.*, Ex. 3, p.3. The Pole Shipping invoice accurately

---

[1] Several alternative grounds exist to justify vacatur, viz: (1) Oram Marine's bank, Korean Exchange Bank, directly credited its account and therefore Korean Exchange Bank, not defendant, is entitled to the funds; (2) Bauche Energy was the originator of the EFT (defendant was neither the originator nor intended recipient).

2

set forth, under "Remittance details," Oram Marine's name and bank account, however, at the top, it mistakenly made reference to "Oram Tankers."[2]

This mistake was carried forward when Bauche Energy came to pay freight on the ORAM BLOSSOM and is reflected in the resulting SWIFT message sent on June 12, 2008 by Bauche Energy's bank, BNP Paribas Geneva, to Oram Marine's bank, Korea Exchange Bank. The instruction, nevertheless, correctly identified Oram Marine's account number (650006485917) under paragraph entitled "59 BENEFICIARY." *Id.*, Ex. 4. The following day, June 13, 2008, Pole Shipping relayed a message from Oram Marine ("from owners"), confirming that the "funds have been received in our bank account," but that due to the mistaken reference to "Oram Tankers Ltd.," Oram Marine "cannot draw the funds from bank." *Id.*, Ex. 5.

Bauche Energy immediately, at 10:06 AM, on June 13, instructed BNP Paribas to correct the beneficiary name to "Oram Marine Co. Ltd." *Id.*, Ex. 5. BNP Paribas responded at 11:44 AM the same day advising, for the first time, that the bank was "holding the funds due to a process of maritime attachment" served June 12, 2008. Ex. 6. This notice originated from BNP Paribas New York to BNP Paribas Geneva. According to records subsequently received from BNP Paribas New York, counsel for plaintiff appears to have served the Order on the bank, by email timed at 8:41 AM, June 12, 2008. However, it is not clear if such service was on BNP Paribas. Kleiner Decl., Ex. 8.

The Order itself lists some twenty-one garnishee banks in New York, including BNP Paribas, and calls for attachment of any funds or other property of defendant, "Oram Tanker Ltd." Ex. 8. Nowhere is BNP Paribas ordered to restrain property or funds of

---

[2] This mistake was evidently due to the fact that, one year before, Bauche Energy had chartered the MT ZHONG HUA 7 from "Ocean Tanker Ltd." and Pole Shipping must have used its old invoice form for the

3

Oram Marine or "Oram Tankers." The Charter Party, the freight invoices, and the other documents described above, demonstrate that Oram Marine and not the defendant, Oram Tanker Ltd. was the intended beneficiary of the funds and/or EFT presently restrained by BNP Paribas, pursuant to the Order.

Attached to the accompanying declaration of Dae-Kyun Jeong, a director of Oram Marine, are copies of the Certificates of Business Registration for both Oram Marine and Oram Tanker Ltd., showing them to be separate corporations organized under the laws of Korea, maintaining separate bank accounts at the Korean Exchange Bank. *Id.*, Exs. 1 and 2.

Bauche Energy had nothing to do with any disputes or claims that KTB Oil may have against Oram Tanker Ltd. Bauche Energy has always performed in good faith, but Oram Marine has advised Bauche Energy that if the freight is not paid to it by the time that the Vessel arrives at the discharge port of Ulsan (present ETA: Monday, June 30, 2008 New York Time), it will exercise a maritime lien on the cargo for the freight and will not deliver the cargo to Bauche's customer. Such an action would cause Bauche Energy to incur significant damages and threatens to irreparably harm its relations with an important customer, which might claim against it for any market loss, even if it accepts late delivery. If the customer rejected the cargo, which is valued at $1,482,543, Bauche Energy would be exposed to the risk of substantial market loss, as well as the cost of trying to re-sell and re-transport what new buyers would come to know as distressed cargo. R. Dip Decl. ¶12.

---

ORAM BLOSSOM, but failed to properly conform the document to Oram Marine's transaction. *Id.* Ex. 7.

# ARGUMENT

## I.

## THE ATTACHMENT MUST BE VACATED BECAUSE THE ATTACHED FUNDS ARE NOT PROPERTY OF THE DEFENDANT

A party claiming an interest in attached property is entitled to contest the attachment pursuant to an expedited hearing under Rule E(4)(f).[3] In addition, Local Admiralty and Maritime Rule E.1 of this District provides that the adversary hearing required in Supplemental Rule E(4)(f) be conducted by a judicial officer "within three court days, unless otherwise ordered."

As originator of the transfer of funds held by BNP Paribas pursuant to the Order, Bauche Energy claims an interest in the funds entitling it to a hearing under Rule E(4)(f). It is the law of this Circuit that the originator of an EFT holds an interest in the funds. *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002). In *Winter Storm*, the Second Circuit held that the originator of an electronic funds transfer had an attachable interest in the funds under Supplemental Rule B.

Moreover, Oram Marine, to whom Bauche Energy was required to pay freight, has asserted that the freight payment is still due and owing. As a result, Oram Marine is claiming a maritime lien for unpaid freight against cargo shipped by Bauche Energy

---

[3] Supplemental Rule E(4)(f) provides, in relevant part:

> **Rule E. Actions in Rem and Quasi in Rem: General Provisions**
>
> **(4)    Execution of Process; Marshall's Return; Custody of Property; Procedures for Release.**
>
> (f)    *Procedure for Release from Arrest or Attachment.* Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

aboard the ORAM BLOSSOM and has threatened to delay discharge of the cargo to Bauche's customer when the vessel arrives at Ulsan on June 30, 2008, New York time. If the funds are not released, Bauche Energy may be required to make a second payment to Oram Marine and may suffer significant damages under its contract with its customer, the receiver of the cargo. Since disputes between Oram Marine and Bauche are subject to London arbitration, the finding of this Court as to whether Bauche Energy has paid freight will not be binding on London arbitrators under English law. Under these circumstances, Bauche Energy clearly has an interest in the attached funds sufficient to contest the attachment under Rule E(4)(f).

As shown herein, the preponderance of the evidence clearly shows that Oram Marine was the intended beneficiary of the funds and that the reference to "Oram Tankers" in the SWIFT message implementing the EFT was the result of a clerical error.

## II.

### AS THE EVIDENCE OVERWHELMINGLY SHOWS THAT ORAM MARINE IS THE INTENDED BENEFICIARY OF FUNDS, PLAINTIFF CANNOT MEET ITS BURDEN OF PROVING THAT THE ATTACHED FUNDS ARE THE PROPERTY OF DEFENDANT, AND THEREFORE THE ATTACHMENT SHOULD BE VACATED

On the instant Motion, plaintiff bears the burden of showing why the attachment should not be vacated. *Egyptian Navigation Co. v. Baker Investments Corporation*, 2008 WL 1748456 (S.D.N.Y.). Specifically, plaintiff must show that (1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli Shipping v. Gardner Smith PTV Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).

Clearly, plaintiff cannot sustain its burden of proving that the attached funds are the property of defendant. Bauche Energy does not contest the fact that the controlling law in this Circuit permits maritime attachment of EFT funds.[4] However, while the Second Circuit in *Winter Storm* recognized that Rule B permits a plaintiff to attach intangible items including EFTs, it nonetheless required that "[o]f course, the defendant's entitlement to the credit or interest in the debt must be clear." *Winter Storm Shipping, Ltd. v. TPI,* 310 F.3d 263, 276 (2d Cir. 2002).

Here, defendant Oram Tanker Ltd.'s entitlement to the attached funds is far from clear. On the contrary, Bauche Energy has shown that it was indebted not to defendant Oram Tanker Ltd. or a nonexistent entity named "Oram Tankers Ltd." but to "Oram Marine Co. Ltd." As originator of the EFT, Bauche Energy instructed its bank to make the EFT to Oram Marine's bank account because it was contractually obliged to pay freight to Oram Marine under the terms of a charter party between them. The mistaken reference to Oram Tankers as the beneficiary cannot serve as a basis to give defendant an attachable interest in the funds. *Egyptian Navigation Co. v. Baker Investments Corporation,* 2008 WL at 1748456.

In *Egyptian Navigation,* the court vacated funds restrained by an intermediary bank in an EFT transaction where the originating party, while stating the correct bank

---

[4] There is a split among district courts in this Circuit as to whether the Second Circuit's holdings in *Winter Storm* and *Aqua Stoli* require the district court to sustain an EFT where the defendant is alleged to be the purported beneficiary rather than the originator of the transfer. See, e.g., *Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.*, 461 F.Supp.2d 222 (S.D.N.Y. 2006) (holding that the beneficiary of an EFT has no property interest in the funds transfer attached by an intermediary bank in New York before transfer to the beneficiary's bank outside the United States); cf. *General Tankers Pte. Ltd. v. Kundan Rice Mills Ltd.*, 475 F.Supp.2d 396 (S.D.N.Y. 2007) and cases cited therein (holding that maritime attachment may be sustained regardless of whether the defendant is the originator or the beneficiary). Bauche Energy respectfully submits that the Court should follow the reasoning of Judge Rakoff in *Seamar* and vacate the attachment on

account number for the beneficiary, inadvertently named the defendant against whom the attachment order had been issued as the beneficiary. In *Egyptian Navigation*, the plaintiff had obtained an order of attachment against defendant Baker Investments Corporation. Baker was the owner of a vessel under a charter party between itself and Louis Dreyfus, a nonparty to the action. As charterer, Louis Dreyfus was required to make freight payments to Baker. Baker had requested that Louis Dreyfus remit payment to Adora Investments Inc., a third party to which Baker had assigned its rights to freights under the Dreyfus charter. When making the freight payment, Louis Dreyfus made the same error as Bauche Energy did here. It provided the correct bank account for Adora but mistakenly named Baker as beneficiary of the transfer. One day after making this error, Louis Dreyfus attempted to correct the EFT instruction, but by that time the funds had been attached.

The court perfunctorily dismissed plaintiff's argument that defendant's interest in the EFT was "irrefutable" since Baker was named as beneficiary.

> Finally, Egyptian's argument that "[Baker's] interest in the [EFT] attached at Citibank is irrefutable since [*Baker*] *was the named beneficiary on the EFT*" (Mem. Of Law in Opposition to Mot. To Vacate at 8) (emphasis in original), need not long detain the Court. It is uncontested that Louis Dreyfus directed its bank to route the EFT to a bank account owned by Adora and not by Baker. There is nothing in the record to suggest that the inclusion by Louis Dreyfus of Baker's name in the EFT instructions was anything other than a simple clerical mistake. Indeed, Adora has submitted evidence that Louis Dreyfus attempted to correct the EFT instructions within a day of the transfer, but too late to avoid the interception of Adora's funds by Citibank in New York. Egyptian cites no authority for the proposition that an entity with no interest in an EFT under the terms of a prior assignment to a third party

---

the alternative ground the Bauche Energy, the originator of the EFT, is the party having an interest in the funds.

> somehow gains such an interest when the party initiating the EFT mistakenly names that entity as the transaction's beneficiary. Under these circumstances, the Court concludes that Egyptian has not met its burden of demonstrating that the EFT belonged to Baker rather than Adora.

*Egyptian Navigation Co. v. Baker Investments Corporation*, 2008 WL at p.6.

As in *Egyptian Navigation*, it is uncontested that Bauche Energy—the originator of the EFT here—directed its bank to route the EFT to Oram Marine's bank account and not to the bank account of Oram Tanker Ltd. or to a bank account of Oram Tankers Ltd. It is also uncontested that within a day of the transfer <u>and</u> prior to learning of the attachment of the funds, Bauche Energy attempted to correct the EFT instruction to name the correct beneficiary. Given these facts, and in light of the Charter Party terms and commercial invoices requiring payment of freight to Oram Marine, plaintiff cannot prove that Oram Marine was not the intended beneficiary of the EFT. Therefore, as plaintiff has not shown that the attached funds were the property of defendant, the attachment should be vacated.

### III.

### SINCE ORAM MARINE WAS THE BENEFICIARY OF THE EFT AND PLAINTIFF'S COMPLAINT ASSERTS NO CLAIM AGAINST ORAM MARINE, THE ATTACHMENT SHOULD BE VACATED

Since neither the originator nor the intended beneficiary of the EFT are defendants in this action, the attachment should be vacated. Plaintiff has alleged no basis to hold Oram Marine liable to plaintiff for bunkers allegedly supplied pursuant to the commercial invoices attached to the Complaint. Even if the Court were to permit plaintiff to amend its Complaint (assuming plaintiff had a good faith basis) to assert such

a claim against Oram Marine, the attachment should be vacated. See *T&O Shipping, Ltd. v. Source Link Co. Ltd.*, 2006 WL 3513638 (S.D.N.Y. 2006).

In *T&O Shipping*, plaintiff commenced an action against company named Source Link. Funds belonging to a company named Source Link Shipping, a separate corporation, were attached pursuant to an order of maritime attachment. The court vacated the attachment of Source Link Shipping's funds. Even though the court permitted the plaintiff to amend its complaint to state a cause of action against Source Link Shipping, it would not retroactively amend the attachment explaining that to do so, where Source Link Shipping had not been named in the complaint, would "raise serious due process questions". *T&O Shipping,* 2006 WL at 3513638, p.7; see also, *Brave Bulk Transport Ltd. v. Spot On Shipping Ltd.*, 2007 AMC 2958 (S.D.N.Y. 2007).

In *Brave Bulk Transport,* the court vacated an order of attachment although it gave plaintiff leave to amend the complaint and seek a new attachment order. In doing so, the court stated cogent reasons why the allegations necessary to support a maritime attachment should appear in the original Complaint rather than in an amended Complaint filed subsequent to the attachment.

> The allegations [in the Amended Complaint] set forth above are sufficient for the Court to conclude that Brave Bulk has a good faith basis for alleging that ZSL is Spot On's alter ego. However, I agree with Chief Judge Wood that the place where those allegations should appear is in the complaint—not in material submitted to the Court for the first time in opposition to a motion to vacate. The wholly conclusory allegations in the Amended Complaint are, upon reflection, simply insufficient. Were a plaintiff to be permitted to rely on such allegations to obtain an attachment against an entity that is not a party to a contract sued on, the already thinly stretched remedy of maritime attachment

could disrupt the commercial activities of entities whose links to
the real defendant in interest are tenuous or nonexistent.

Bauche Energy recognizes that the court in *Tide Line, Inc. v. East Trade Commodities, Inc.* et al., 2007 AMC 252 (S.D.N.Y. 2006) effectively permitted such a retroactive attachment by staying the release of attached funds pending the filing of an amended complaint and a new order of attachment by plaintiff to properly allege claims against one of the named defendants. However, as the court in *T&O Shipping* noted, *Tide Line* is distinguishable on important grounds, especially the fact that the party whose funds were attached in *Tide Line* had already been named as a defendant and the issue was the adequacy of the plaintiff's pleading of claims against that defendant. In *T&O Shipping*, the attached funds were the property of a party not named in the order of attachment had been issued. Therefore, the attachment could not stand.

Likewise here, the EFT is the property of Oram Marine, the intended beneficiary who was not named in plaintiff's complaint or the Order. Therefore, the attachment should be vacated.

## CONCLUSION

For the reasons stated herein, the Court should issue an Order forthwith vacating the attachment of funds transferred by Bauche Energy.

Dated: June 29, 2008
      New York, New York

HILL, BETTS & NASH LLP

By: _____
James D. Kleiner
JK 6038
*Attorneys for Bauche Energy S.A.*
One World Financial Center
200 Liberty Street, 26th Floor
New York, NY 10281-1003
Tel. No.: (212)-839-7000